1              UNITED STATES BANKRUPTCY COURT
                 SOUTHERN DISTRICT OF FLORIDA
2

3    IN RE:                      CASE NO. 17-21018-LMI

4    ALEIDA C. NUNEZ,

5              Debtor.
     _____/
6

7                       ECF #60, 63

8                       May 8, 2018

9              The above-entitled cause came on for hearing

10   before the Honorable LAUREL M. ISICOFF, one of the Judges

11   in the UNITED STATES BANKRUPTCY COURT, in and for the

12   SOUTHERN DISTRICT OF FLORIDA, at 301 North Miami Ave.,

13   Miami, Miami-Dade County, Florida on May 8, 2018,

14   commencing at or about 11:24 a.m., and the following

15   proceedings were had.

16

17

18

19

20

21            Transcribed from a digital recording by:
                    Cheryl L. Jenkins, RPR, RMR
22

23

24

25

1
2
                        APPEARANCES:

3
4          NANCY NEIDICH, Chapter 13 Trustee

5
                  FREIRE & GONZALEZ, by
6                 LAILA GONZALEZ, Esquire
                  On behalf of the Debtor

7
8         ROBERTSON ANSHULTZ & SCHNEID, by
                  APRIL HARRIOTT, Esquire
9                 DAVID ROSENBERG, Esquire
          On behalf of Reverse Mortgage Solutions

10
11                   ALSO PRESENT
12       ECRO - Electronic Court Reporting Operator

13
                     - - - - - - -

14
15
16
17
18
19
20
21
22
23
24
25

```
1                    MS. NEIDICH:  Your Honor, the next one is on
2    Page 60, at the top.  It's Matter Number 175,
3    Aleida Nunez.
4                    THE COURT:  All right.  Appearances.
5                    MR. ROSENBERG:  Good morning, your Honor.
6    David Rosenberg on behalf of the secured creditor, Reverse
7    Mortgage Solutions Group.
8                    THE COURT:  All right.  Spell your name.
9                    MR. ROSENBERG:  D-a-v-i-d R-o-s-e-n-b-e-r-g.
10                   MS. HARRIOTT:  Good morning, your Honor.
11   April Harriott on behalf of Reverse Mortgage Solutions,
12   last name H-a-r-r-i-o-t-t.
13                   THE COURT:  Okay.  Is anyone going to make
14   an appearance ---
15                   MS. NEIDICH:  Laila is here.  I don't know
16   where she is.  She was sitting right there, Judge,
17   otherwise I would have gotten her first.  I'm sorry.
18                   THE COURT:  I saw Ms. Harriott, and then you
19   made an appearance.  So I'm, like, I don't think you can
20   switch sides.
21                   All right.  Ms. Gonzalez.  We're on Nunez,
22   the motion to reconsider.
23                   MS. GONZALEZ:  Your Honor, Laila Gonzalez on
24   behalf of the debtor, G-o-n-z-a-l-e-z.  I just want to
25   grab the papers so I can write.
```

```
 1                    THE COURT:  Okay.  All right.  Who is going
 2    to be speaking on behalf -- Ms. Harriott or Mr. Rosenberg?
 3                    MR. ROSENBERG:  I believe I am, your Honor,
 4    Mr. Rosenberg.
 5                    THE COURT:  Okay.  So, I have reviewed your
 6    motion, and I have read the Palmero case.  So, is there
 7    anything else you would like to say or highlight with
 8    respect to your argument before I hear from Ms. Gonzalez?
 9                    MR. ROSENBERG:  Yes, your Honor.  I'll just
10    briefly go through our points.
11                    Your order was decided on two principal
12    conclusions, that the mortgage unambiguously defined
13    Aleida as the borrower, and that Smith and Edwards were
14    controlling.
15                    I think that Palmero disposes of both of
16    those.  Obviously this Court's order was decided before
17    Palmero, and before our motion -- and the case came out
18    after this order, and after the motion for
19    reconsideration, Palmero.
20                    In there it says you must consider other
21    documents, even if the mortgage is unambiguous, and
22    construe them all together, and that's because these other
23    documents can modify the mortgage, and that when you're
24    reading all these documents together, they should be read
25    together as one contract, not as separate documents, and
```

1    the idea is to reconcile them all so that the same term

2    means the same thing in each document, akin to if you're

3    interpreting a federal statute, and if the court -- and if

4    the legislature uses the same term in multiple provisions

5    of the statute, you're going to give the same effect to

6    that term in each provision, and that's what Palmero says

7    here.

8                It also says with respect to Smith and

9    Edwards, they're decided on limited documents, just a note

10   and mortgage, and they're distinguishable, and it held

11   that the spouse and the children are not borrowers.

12               I think that is important here because in

13   our case, as in Palmero, you're looking at more than just

14   a note and mortgage.  When you just have two documents,

15   you can split the baby either way.  You can say that,

16   well, the mortgage is controlling, or the note was

17   controlling, but where, as here, we have 12 documents

18   executed at closing that are included in our original

19   memorandum.  It's 40-plus pages.  I could go through, if

20   your Honor wanted, each document, or ---

21               THE COURT:  No, I want you to show me where

22   in Palmero it says the document is unambiguous.

23               MR. ROSENBERG:  I'm sorry, it doesn't say

24   that it's unambiguous, but it does define the mortgage.

25   The mortgage -- I'm reading from asterisk four, the

```
 1   mortgage defined the borrower as Mr. Palmero with a life

 2   estate to his wife and children.

 3               THE COURT:  I'm sorry, I have whatever it is

 4   that you submitted.  So give me the page number on the

 5   docket item, the docket.

 6               MR. ROSENBERG:  I have a copy of the case if

 7   your Honor would like to ---

 8               THE COURT:  I have it in front of me, but I

 9   have it printed out from the docket.  So I need you to

10   tell me what page of the document that was on the docket,

11   or the page number at the bottom of the opinion.

12               MR. ROSENBERG:  The page number at the

13   bottom, yes, your Honor.  It's Page Number 5.

14               THE COURT:  Okay.  So Page Number 5,

15   discussion, okay.  All right.  What are you asking me to

16   read?

17               MR. ROSENBERG:  So, your Honor, where

18   they're talking about the borrower, they say that --

19   they're citing Sardon Found, which we also cited in our

20   motion for reconsideration.

21               THE COURT:  I'm not seeing it on Page 5 of

22   the opinion.

23               MR. ROSENBERG:  I'm sorry, your Honor.

24               THE COURT:  Okay.  This is -- okay.  This is

25   what you submitted to me to read.  Okay.  Look up,
```

1   Mr. Rosenberg.

2            MR. ROSENBERG:  Yes, your Honor.

3            THE COURT:  See that, that's the document

4   I'm looking at.  Tell me what page of that document you

5   want me to look at.

6            MR. ROSENBERG:  So, where they begin the

7   discussion --

8            THE COURT:  Okay.

9            MR. ROSENBERG:  -- if you read over there --

10   so I'll just start -- so the entire discussion is really

11   our point, your Honor.  They don't say in there that the

12   mortgage is unambiguous, they don't use that word, that's

13   my argument.

14            So my argument is that what the Court is

15   saying in this case, and it says it in its holding, in its

16   conclusion at the end, right before the dissent, that the

17   only borrower is the person who signed the mortgage as the

18   borrower, it's not the wife, it's not the children.

19            THE COURT:  Uh-huh.

20            MR. ROSENBERG:  And that's the point I'd

21   like to highlight for the Court.  They cite in that case

22   to Sardon Found, which we have in our motion for

23   reconsideration, your Honor.

24            THE COURT:  Uh-huh.

25            MR. ROSENBERG:  And in there they say that

1   you have to interpret all these documents together,

2   because the other documents can modify the mortgage, and

3   that's the important point here, is that in our -- in the

4   -- in the 12-plus documents executed at closing, 40 pages,

5   Aleida focuses on one document, and just two parts of that

6   one document, the definition of the borrower, and the

7   signature block, that's it, and I can walk you through,

8   your Honor, if you wanted, all the other documents at

9   closing that were executed, this is at Docket Entry Number

10  48, and I can walk you through the mortgage, where it

11  refers to singular borrower; the note, where it defines

12  the borrower as each person signing at the end of the

13  note, and only Olga signed; the loan agreement, defined

14  borrower only as Olga; the schedule of closing costs, only

15  Olga signed as borrower; the loan application, only Olga

16  signed as borrower; the space labeled co-borrower is

17  blank.  That's Page 41 of DE 48.  The HUD addendum, only

18  Olga signed above the signature line stating borrower,

19  still singular.  HUD settlement statement, addendum, good

20  faith estimate, reverse mortgage reports, disclosure

21  statement and certificate of HECM counselling.  All of

22  these only Olga signed except for one document, the

23  mortgage, where Aleida signed as the remainderman.

24              And what the Court is seeing in Palmero is

25  that when the courts in Smith and Edwards were reviewing

1    the record before them, they only had two documents, the

2    note and the mortgage.  So they were only looking at two

3    documents.

4            When you have two documents, you know, you

5    can split the baby, just like Solomon, you can go either

6    way.

7            Where you have four documents, like -- or

8    five documents, I'm sorry, like in Palmero, they found

9    that when she signed only one, if you read everything

10   together in conjunction, the only reasonable

11   interpretation is to find that the wife and the children

12   were not the borrower.

13           In our case it's even more persuasive than

14   Palmero.  We have 12-plus documents, 40 pages, that

15   includes a loan application.  Out of all of that, Aleida

16   signed one thing as a remainderman and that's it.

17           So, I would submit that Palmero

18   distinguishes both the points that your Honor talks about

19   in your opinion, one, that the mortgage is unambiguous,

20   you don't need to go beyond it.  Palmero says you should

21   go beyond it when all the documents are before you.

22           Now, obviously your Honor didn't have

23   Palmero when she made this original decision, and under

24   Smith and Edwards they only had two documents, so that's

25   distinguishable.  So, Palmero is currently the law in the

1   3rd DCA when you have many documents together, as we do

2   here, you know, again, 12-plus documents, 40 pages, and I

3   think, you know, that's a very important point.

4                   Your Honor, the second point I wanted to

5   make is with respect to the other issue in your order --

6                   THE COURT:  God bless you.

7                   MR. ROSENBERG:  -- which is contract

8   construction, and you don't need to go outside the

9   mortgage if you find it to be unambiguous.

10                  So, we're essentially asserting three

11  alternative points here.  We think it's unambiguous when

12  read in conjunction with all the other documents about

13  with respect to Aleida not being the borrower.

14                  Alternatively we'd submit there is either a

15  patent or a latent ambiguity that requires the court to go

16  outside of the terms of this one mortgage, and the 4th DCA

17  opinion in Levine discusses that, and it says that when

18  you're talking about the relationships of parties to one

19  another, and normally extrinsic evidence is not admissible

20  to prove the terms of the contract, but when you're

21  talking about the relationship of one party to another,

22  you can consider extrinsic evidence, you know, again, even

23  assuming arguendo that you didn't have these 12 documents

24  together here, and you're reading them all as one

25  contract, as you must under Palmero.

1              So, what I would suggest is, if you look at

2    the intent of the parties, the fact that only one person

3    even filled out a loan application, that only one person

4    signed 12 of these documents, apart from the mortgage, at

5    closing, you know, I think that if you look at the intent,

6    which is the question when you're analyzing a contract,

7    because obviously the failure to contract is very

8    important under Florida law, and it's even embedded in the

9    Constitution, and I would suggest, your Honor, that the

10   intent is apparent, that when intended only for one person

11   to be the borrower, and you begin with the plain language,

12   yes, but you don't have to stop there.  You can examine

13   all the documents together.  With respect to a

14   construction against the drafter or principal, that's

15   only, you know, if all other interpretative guides fail,

16   which I don't think they have and, you know, I

17   respectfully -- or I would submit if this Court has any

18   real concerns here, I think an evidentiary hearing would

19   be appropriate here.  I would love to put Aleida on the

20   stand and ask her, I mean, did you really think you were

21   obligated to make those payments?  Did you make any

22   payments throughout the course of this loan?  Were you

23   paying taxes?  Were you paying insurance?  Because the

24   courts have held, I can give you a citation if your Honor

25   wants, that the conduct of the parties is just as

```
1    important as the language.  Was Aleida actually acting as

2    a borrower throughout this entire loan?  I believe the

3    evidence will show that she was not.

4                  THE COURT:  But those cases don't normally

5    look at reverse mortgages, because under a reverse

6    mortgage, as you just alluded to, the only things you have

7    to pay are taxes and insurance, and we know that the

8    decedent didn't file the taxes and insurance, which is why

9    you originally sought to foreclose, right?

10                 MR. ROSENBERG:  Correct, your Honor.

11                 So, I would just submit, though, that there

12   is conduct that you can take, you know, whether it's

13   calling, whether it's receiving letters, something that

14   would be evidence at a hearing to show -- I mean, and this

15   is not an independent point, it buttresses our original

16   point, which is that, you know, again, we think that when

17   taken as a whole, the contract, which includes all 12

18   documents, is unambiguous.

19                 You know, but even if you want to go beyond

20   that, and you want to say there are ambiguities or

21   something to that effect, you know, I think additional

22   evidence is important here because, I mean, respectfully,

23   you know, Aleida was not the borrower.  I mean, she didn't

24   even qualify for a reverse mortgage.

25                 THE COURT:  Right, but you're conflating the
```

1  borrower under the loan, as opposed to "borrower" as a

2  defined term under one document for purposes of rights and

3  obligations under one document only.

4        MR. ROSENBERG:  Your Honor, I think that

5  they have to be conflated under the reasoning in Palmero,

6  because you have to read all these documents together.

7        If a borrower means one thing in one

8  document and another thing in another document that are

9  executed at the same transaction, I think that would lead

10  to unreasonable interpretations, and there are provisions

11  in the mortgage, you know, that reflect, this is going to

12  cause problems going forward.

13        You know, DE 48, Page 19, this is the

14  mortgage, payment of principal and interest, borrower

15  shall pay when due the principal of and interest on the

16  debt evidenced by the note.

17        So, you know, even the mortgage itself

18  reflects that the parties are thinking about all these

19  documents together, and an interpretation of Aleida as the

20  borrower doesn't even make sense under Paragraph 1

21  because they're ---

22        THE COURT:  And when does the interest and

23  principal become due under the note?

24        MR. ROSENBERG:  I mean, it can become due

25  upon maturity, or if it's accelerated earlier, so if they

1    mix taxes and insurance.

2              So, this is saying that Aleida is

3    responsible for the debt under the note, even though she

4    never signed the note.  It doesn't make sense.

5              The only reasonable interpretation of the

6    mortgage is one that conforms with the terms of the other

7    documents executed at closing.  So ---

8              THE COURT:  So you're saying under the terms

9    of a reverse mortgage, the only time under which

10   obligations will be due is either a default under the

11   mortgage, not paying taxes and insurance, or when the

12   property is sold and the mortgage is the encumbering

13   document, right, and that then the obligations are due,

14   that's an obligation of the property, correct?

15             MR. ROSENBERG:  In rem, correct, your Honor.

16             THE COURT:  Okay, and an in rem obligation,

17   in order to subject the property to the in rem obligation,

18   then both the fee owner and remainderman must agree to

19   that obligation, that's the reason why remaindermen are

20   required to sign, that's the reason why spouses are

21   required to sign, correct?

22             MR. ROSENBERG:  Correct, your Honor, I agree

23   100 percent as a disclaimer of interest.  They're

24   essentially permitting them to levy this mortgage on the

25   property, but that's ---

1              THE COURT:  Okay.  So what I'm saying is I'm

2      not persuaded by the last point that you just made,

3      because the whole way that a reverse mortgage is set up is

4      because it is an in rem, not an in personam obligation.

5              MR. ROSENBERG:  So ---

6              THE COURT:  And so the obligations, the

7      in rem obligations must, must be imposed on all those who

8      claim an interest in the property, however they claim the

9      property.

10             MR. ROSENBERG:  So ---

11             THE COURT:  So under your, under your

12     argument, your argument, then Ms. Nunez, the debtor, not

13     the decedent, has no obligation to then allow the property

14     to be used, because you're saying that she is not the

15     borrower.  So she is not obligated under that mortgage to

16     allow her interest to be subjected to that payment.

17             MR. ROSENBERG:  I think there are two

18     questions there, your Honor.  The question you're asking

19     is whether the mortgage is valid.  That's the question,

20     whether ---

21             THE COURT:  No, you made an argument to me

22     that it's not logical that borrower, for purposes of the

23     mortgage, includes Ms. Nunez, the remainderman, because of

24     that particular obligation, and I'm asking you, but isn't

25     that the very obligation that requires her to sign the

```
 1    mortgage, because it's an in rem obligation, not an

 2    in personam obligation?

 3                   So why don't you move on to whatever other

 4    points you want to make.

 5                   MR. ROSENBERG:  Okay.  Could I respond to

 6    that briefly, your Honor?

 7                   THE COURT:  If you'd like.

 8                   MR. ROSENBERG:  Sure.  So, the point I'm

 9    trying to make is that the question, when you're

10    interpreting the contract, should be read in conjunction

11    with the law, of course, and, you know, how mortgages

12    work, but the idea is the intent of the parties.

13                   So whether or not this mortgage is

14    ultimately valid or insurable is a separate question.  The

15    question that's before this Court is whether the parties

16    intended for Aleida to be the borrower, that's the only

17    question.

18                   The implications arising from deciding she

19    is or is not is a separate issue then whether it's

20    insurable or not.

21                   THE COURT:  Okay.  You are framing the

22    question in a way that makes the answer obvious, but that

23    is not the issue before me, and that is not how I decided

24    the issue.

25                   The issue that I decided was whether, for
```

1    purposes of the mortgage only, whether the defined term

2    "borrower", as used in the mortgage only, includes the

3    debtor Aleida Nunez, that is the issue.  Not whether

4    Aleida Nunez is a borrower, because my opinion

5    specifically says she is not for purposes of any other

6    document.  She does not have the right to try to draw down

7    further on the available credit.  She has no rights and no

8    obligations outside the mortgage, and that is the crux of

9    my ruling.

10             But please make whatever other points you'd

11   like to make and then I'll hear from Ms. Gonzalez.

12             MR. ROSENBERG:  Yes, your Honor.  I would

13   just again say that the mortgage is a contract, and so,

14   you know, even within these four corners, the question is

15   still going to be the intent.

16             THE COURT:  And who drafted the contract?

17             MR. ROSENBERG:  Well, the construction

18   against the drafter provision is utilized only after all

19   other interpretative guides have failed.  So, and as

20   you've just -- all other interpretative guides, like an

21   evidentiary hearing, your Honor could use to discover the

22   parties' intent, which again is the real question.

23             So, then I would just ---

24             THE COURT:  Okay.  So going back, going back

25   again, the issue is not the intention for purposes of the

```
 1   whole loan.  The issue is why was Aleida Nunez required to
 2   sign the mortgage?
 3              Now, we would all be in a better place if
 4   whoever drafts these form documents had done a better job.
 5   For example, I don't remember the mother's first name, mom
 6   (borrower), and daughter (remainderman), collectively
 7   mortgagors, right, put everything in there that's an
 8   obligation of the borrower, the remainderman, the
 9   mortgagor, as delineated at the end.  If the -- the final
10   paragraph that says the borrowers, by signing here, or the
11   borrower, by signing here, agrees, blah, blah, blah, well,
12   if it truly only meant the borrower, then why is she
13   signing?
14              So, she's signing, the remainderman, because
15   she has to obligate her interest to all those promises,
16   under the mortgage they're defined as promises by the
17   borrower only.  So that is what I'm focused on.  Do you
18   understand?
19              MR. ROSENBERG:  I do understand, your Honor.
20              THE COURT:  Okay.  So what else do you want
21   to tell me before I hear from Ms. Gonzalez?
22              MR. ROSENBERG:  Just that Palmero addresses
23   the exact same issue then, the -- though undisputed that,
24   you know, a wife or a remainderman would have to sign the
25   mortgage --
```

1           THE COURT:  Uh-huh.

2           MR. ROSENBERG:  -- and Palmero said, that's

3   okay, we're still going to find that they're not a

4   borrower under the mortgage.

5           The last two points, your subordinate points

6   that you referenced in your opinion, that was the 24 CFR

7   206.27, mortgagor, borrower, whether it changed, whether

8   it did not.  I would say Palmero, the mortgage there was

9   disputed in 2006.  Ours is in 2008.  So you're going to

10  have the same provision applying, the changes that went

11  into effect in 2014 were not in effect in Palmero.  So,

12  again, I would submit that's controlling on this Court.

13          THE COURT:  Why?

14          MR. ROSENBERG:  (No verbal response.)

15          THE COURT:  Why?

16          MR. ROSENBERG:  Because ---

17          THE COURT:  Why do you think that because

18  Palmero, the Court says that that particular provision had

19  been changed, which it had not, which it had not, okay,

20  because I looked at the regulations myself.  They did not

21  change until 2014.  So just because the 3rd DCA made a

22  mistake, then I should make the same mistake?  I'm bound

23  by their mistake?

24          MR. ROSENBERG:  Okay.  So, then I'll make my

25  second argument.

```
 1                    THE COURT:  Okay.
 2                    MR. ROSENBERG:  So, my second argument is
 3      that if you look at Black's Law Dictionary, it's
 4      interchangeable, the terms, mortgagor and borrower is
 5      interchangeable.  They define it as someone who mortgages
 6      -- this is, they're defining mortgagor, someone who
 7      mortgages property, the mortgage debtor or borrower.
 8                    THE COURT:  Okay.  So that actually doesn't
 9      work for you.
10                    MR. ROSENBERG:  Well, I mean, I think it
11      does if you buy my first argument.  If you don't buy my
12      first argument, then it doesn't.  But if you buy my first
13      argument, it does, because I think that -- well, for the
14      reasons I said.
15                    THE COURT:  Okay.
16                    MR. ROSENBERG:  So, then the second concern
17      of this Court, ML 1997.15, you know, why a remainderman is
18      required to sign, why it's not, and does the concern
19      your Honor is just addressing -- again, this has to do
20      with insurability.  It has to do with whether you can
21      collect from HUD.  It has to do with ---
22                    THE COURT:  No, it doesn't.  It has to do
23      with whether the mortgage is valid, that's what it has to
24      do with.
25                    It may be required also in order to make it
```

Page 21

```
 1   insurable, but a mortgage in the State of Florida, as well
 2   as in most other parts of the country, is not enforceable
 3   unless anyone who has an interest in the property, whether
 4   it's by virtue of curtesy or dower, which is why wives and
 5   husbands have to sign, or it's by virtue of life estate
 6   and remainderman, that's why they have to sign.  Yeah,
 7   it's not insurable unless you have all parties in interest
 8   subject their in rem interest.
 9                 I'm raising this with you, Mr. Rosenberg,
10   because I know, and you probably have anticipated what my
11   ruling is, I know you are going to appeal this, and that's
12   fine, that's fine, and it could be that a higher court
13   reverses me.  If that's the case, sobeit.
14                 But the issue that I want to make sure that
15   you understand, and that any reviewing court understands,
16   is that this is an issue of real estate law, and I agree
17   absolutely with the law in Florida that you look at all
18   the documents to understand the intent of the parties, I
19   don't disagree with that.
20                 But in this particular case there is no
21   question that the only way that this document could be
22   binding is if Ms. Nunez, for purposes of this document,
23   falls under the defined term "borrower", which is what the
24   document was drafted to do.
25                 As I said to you, and perhaps this is a
```

```
1    message to bring back to the regulators, or whoever drafts

2    this form, the form is sloppy.  The form needs to be

3    fixed.  But until it's fixed, the question is what are the

4    rights and obligations of the parties.

5                So I hear you, but in any event, let me hear

6    from Ms. Gonzalez in case she wants to snatch victory from

7    the jaws of defeat, or is it defeat --

8                MR. ROSENBERG:  Can I just make ---

9                THE COURT:  -- from the jaws of victory?

10               Go ahead.

11               MR. ROSENBERG:  Just five seconds?

12               THE COURT:  Go right ahead, make your

13   record.

14               MR. ROSENBERG:  Yes, your Honor.

15               So, the question that was originally raised

16   by Aleida was not the validity, it was whether she was the

17   borrower, which, for the record --

18               THE COURT:  I know that.

19               MR. ROSENBERG:  -- my understanding is that

20   that goes to intention, and intention of the parties.

21               THE COURT:  I understand.  I understand.  I

22   understand that validity is not on the table.  I

23   understand that completely.

24               MR. ROSENBERG:  If your Honor doesn't

25   have any other questions, then I think everything else
```

1    is covered in our motion and our supplemental, you

2    know, explanation of Palmero, which again it is

3    controlling.

4                    THE COURT:  All right.  Thank you.

5                    All right.  Ms. Gonzalez.

6                    MS. GONZALEZ:  Your Honor, risking taking

7    defeat out of the jaws of victory, we did file our

8    response that hopefully your Honor was able to see, just

9    basically stating that Levine and Palmero are

10   distinguishable from the present case.

11                   THE COURT:  All right.  I did not see it.

12                   MS. GONZALEZ:  But other than that,

13   basically ---

14                   THE COURT:  Oh, I mean, I did see it but I

15   didn't -- oh, no, I didn't see this one.  You should have

16   called if you wanted me to read this.  I did not read

17   this, so why don't you make the argument?

18                   MS. GONZALEZ:  Thank you.

19                   Your Honor, the argument is, is that in the

20   specific cases, the Levine and the Palmero case, in the

21   Palmero case specifically, there was literally a document

22   that the debtor's wife signed which said I am not a

23   borrower.  There is no such document, and if your Honor

24   did put Ms. Nunez on the stand, because we've spoken to

25   her, my proffer is that she would testify that she did

Page 24

1    believe that she was a part of this transaction, she was

2    on title with her mother prior to the entry of this

3    mortgage, and we do not believe that your Honor should

4    grant the motion to reconsider.

5              THE COURT:  So let me ask you a question.

6              MS. GONZALEZ:  Yes.

7              THE COURT:  Are you saying that -- are you

8    agreeing with Mr. Rosenberg that I need to have an

9    evidentiary hearing?

10             MS. GONZALEZ:  No, your Honor, not at all.

11   As a matter of fact, it was our understanding that the

12   document, like your Honor ruled, is indeed unambiguous,

13   and more to that, even if your Honor had the evidentiary

14   hearing, she would testify that she was a borrower.  So,

15   we do not believe that the document is ambiguous.  It is

16   unambiguous.  It clearly stated that the debtor is a

17   borrower, along with her mother.

18             THE COURT:  Okay.  Well, I know this is

19   going to come as a tremendous shock to you, but I'm going

20   to deny the motion to reconsider, but let me make some

21   observations, and make sure that my reasoning is clear,

22   both to you and to the reviewing court.

23             Okay.  First of all, I don't think I need an

24   evidentiary hearing, and this is a legal issue as far as

25   I'm concerned.  Your argument is that, and I don't

Page 25

```
 1   disagree with Florida law, and I do agree with you that
 2   Palmero does change my obligations to be bound by Edwards
 3   and Smith, I agree with you, because I think that's what
 4   the 3rd DCA is now saying.  The 3rd DCA, whether I agree
 5   with them or not, and even though Judge Emas was one of my
 6   classmates, he's wrong, but it's okay.  The bottom line is
 7   that Palmero does qualify the holdings in Smith and
 8   Edwards, they do.
 9              However -- and so that portion of my
10   opinion, I agree, is no longer a basis for my ruling.  So
11   in that regard you are correct, I agree.
12              Now, what I don't agree with, and what I've
13   tried to make clear in our discussion during your
14   argument, is that the -- it is unfortunate, as I said,
15   that whomever drafted these documents used the word
16   "borrower" in the mortgage, when what they really meant
17   was the mortgagors, and so that is why my opinion made
18   clear that I was looking at the term solely for the
19   purpose of determining who is borrower, or potato chip, or
20   peanut butter and jelly sandwich under the mortgage.
21              If I accept your argument that borrower,
22   means borrower, means borrower, and this is something
23   that was not considered by the 3rd District Court of
24   Appeal in Palmero, and I think has been failed to be
25   considered in other courts that have looked at this issue,
```

1    is what are the obligations of "borrower" undertaken in

2    the mortgage?

3              And if you excise out the remainderman from

4    purposes of that obligation and, in fact, the signature

5    block, in which there is undertaken an intent to be

6    obligated and subjected to the terms of the mortgage, then

7    you do get to the validity issue, because then what are

8    the obligations?  There are none if "borrower" doesn't

9    include the remainderman.

10             And this is something I believe that has

11   been overlooked by every court that has ruled in the

12   manner that you have said.

13             Now remember, for purposes of this

14   document, while we normally look at Florida law for a

15   court sitting in Florida, this is a -- obviously, because

16   the cases are all over the country, right?  This is a

17   document used and interpreted, and you must be consistent

18   in how you interpret it, and I have no idea what the laws

19   are for real estate under these other states, I don't

20   know.

21             So what I have to do is go back and look

22   again, what is the defined term in this document, because

23   that's the only document, and I disagree with Ms. Gonzalez

24   to that extent, I don't care what her client's

25   expectations were with respect to the loan in general,

1    because the debtor, one, was not qualified to be a

2    borrower, and perhaps this ridiculous conflation of

3    defined terms by the regulators that have drafted these

4    documents is what required things like the debtor to

5    quitclaim her interest to her mother and then take a

6    remainder interest, which I believe also happened in

7    either Edwards, or Smith, or both, I don't remember, but

8    it doesn't change the fact that the only way that the

9    debtor could be bound as a remainderman under the mortgage

10   as drafted, is that the defined term "borrower" in the

11   mortgage included her, which, in fact, is exactly how the

12   document is drafted.  It specifically says at the top of

13   the document that "borrower" means mom and daughter.  You

14   can't get around that.

15          I don't care about, you have to look

16   outside, whether it's ambiguous or not ambiguous.  It

17   wouldn't change the fact that this document, for purposes

18   of the rights and obligations under this document,

19   "borrower" includes the daughter, and that is what I will

20   not recede from in my opinion.

21          And I believe that the regulation that I

22   cited, I was a little confused by the Palmero decision,

23   because I looked at that regulation, I checked the history

24   to make sure that I had the dates right.  I didn't even

25   delegate it to my law clerk, because I'm a real estate

1   nerd.  So I do that.  It's weird, I know.  It's okay.  I

2   did it.  So I feel very comfortable that that is the

3   regulation that was in effect.

4              And as I said in my opinion, the only way

5   the mortgage could be consistent with the applicable

6   regulations at the time is if "borrower" meant mortgage,

7   which that's why I said when you made your last point,

8   Mr. Rosenberg, that you are actually saying something that

9   supports my view of the world.

10              Now, let me look at my notes, because I did

11   write some things out beforehand, so that I can make sure

12   that there is something clear.

13              No, I don't think I have anything to add,

14   and so I don't know how to treat this other than to say

15   your motion for reconsideration is denied for the reasons

16   stated on the record, that I do agree, as I stated, that

17   Palmero modifies my obligation to be bound by Edwards and

18   Smith, but that I nonetheless continue to believe that the

19   only logical way to interpret the mortgage, is that the

20   use of the word "borrower" in that document, and only for

21   purposes of that document, includes the remainderman; that

22   defined otherwise would, one, make the mortgage

23   potentially invalid, because then the remainderman is not

24   -- there is no identification of what obligations, if any,

25   are undertaken, there is not even a signature block, just

```
 1   her name, okay, because "borrower" is the only word that

 2   is used when you get to the end, I agree to be subject to,

 3   blah, blah, blah, okay?  And the regulation -- if I'm

 4   repeating myself it's because I'm old, and also that, as I

 5   said, it's not binding, but the very regulation, the

 6   letter, whatever it is that you all -- that I cited, RMS,

 7   whatever, even contemplates, and understands, and makes

 8   clear that those remaindermen do not succeed to the

 9   interest of borrower.  They only have the rights under the

10   mortgage.

11              So, for all of those reasons I deny your

12   motion to reconsider, and direct the parties to proceed in

13   the absence of getting a stay pending appeal in accordance

14   with my order.

15              Any questions, Mr. Rosenberg or

16   Ms. Harriott?

17              MR. ROSENBERG:  Yes, your Honor, just one

18   quick one.

19              THE COURT:  Uh-huh.

20              MR. ROSENBERG:  So, just so I understand

21   fully what you're ruling is then, so you're finding the

22   mortgage itself to be unambiguous, correct?

23              THE COURT:  Uh-huh.

24              MR. ROSENBERG:  And not considering it with

25   the other documents, and then the unambiguous
```

```
 1    interpretation is reinforced, in your mind, by the fact
 2    that without the interpretation, the mortgage would be
 3    invalid?
 4               THE COURT:  Could be.
 5               MR. ROSENBERG:  Could be, could be invalid.
 6               THE COURT:  Could be invalid, but just to
 7    underscore one more time, I am not disagreeing with your
 8    argument that Palmero seems to indicate that
 9    notwithstanding that the mortgage uses the term one way or
10    another, that if you look at it in the context of the
11    other documents, it says what it says, you know, the
12    borrower, for purposes of the whole loan, only means the
13    borrower.  I don't disagree with that.  Like I said, it's
14    an unfortunate use of nomenclature, because I am not
15    saying the borrower under the loan is the debtor.
16               What I'm holding is that the word
17    "borrower", as used in the mortgage, and that's why I
18    said whether it was potato chip or peanut butter and
19    jelly sandwich, the drafters choose to use the word
20    "borrower".  So, in that document "borrower" includes the
21    remainderman.
22               So --
23               MR. ROSENBERG:  Okay.
24               THE COURT:  -- anything else?
25               MR. ROSENBERG:  Nope, that's it,
```

```
 1   your Honor.
 2              THE COURT:  Ms. Gonzalez, anything else?
 3              MS. GONZALEZ:  No, your Honor.
 4              THE COURT:  Okay.
 5              MS. NEIDICH:  There is still the objection
 6   to --
 7              THE COURT:  Right.
 8              MS. NEIDICH:  -- the claim.
 9              THE COURT:  We'll get to that one next.
10              So, Mr. Rosenberg, prepare the order that
11   says for the reasons stated on the record the motion for
12   reconsideration is denied, and that way you can just order
13   the transcript.
14              MR. ROSENBERG:  Thank you, your Honor, for
15   your time.
16              THE COURT:  Okay.  We have an objection to
17   claim.  What is the basis of the objection to claim,
18   Ms. Gonzalez?
19              MS. GONZALEZ:  Your Honor, I actually filed
20   an amended objection to the claim yesterday.  I spoke with
21   the trustee's office.  Ms. Carrington seemed to -- it's
22   very difficult, the proof of claim that was filed makes it
23   extremely difficult, because there is no specific place
24   where it says this is the amount of money owed for escrows
25   paid out pre-petition.  This is the amount of money paid
```

1    out just in a little simple place.  No, your Honor.

2              Instead this is about eight pages, some of

3    them are extremely small, some of the pages very difficult

4    to read, there are several columns.  It's hard to tell

5    what, if anything, was actually paid out for taxes and

6    insurance.  I can't even get a number.  I tried.  I

7    asked ---

8              THE COURT:  Hold on.  That seems fixable.

9              Ms. Harriott, are reverse mortgages subject

10   to the RESPA, annual RESPA statements?

11             MS. HARRIOTT:  I'm not sure if they send

12   annual RESPA statements, but in response to Ms. Gonzalez,

13   we are requesting a continuance on the objection because

14   it is our belief, and I'm sure you understand now, that

15   the loan is due and payable.  So ---

16             THE COURT:  Well, even if it's due and

17   payable, you still -- you know, because remember under

18   Grey, even if I got reversed, okay, the bottom line is

19   that under Grey, even if it's due and payable, the debtor

20   would be able to take care of it within the five years --

21             MS. HARRIOTT:  Right.

22             THE COURT:  -- right?

23             MS. HARRIOTT:  Right.  We don't ---

24             THE COURT:  Okay, but in any event, you have

25   to be able to back up your numbers and show credits and

```
 1   whatnot.  So maybe you and Ms. Gonzalez can work out what
 2   your client can provide in terms of showing debits and
 3   credits and, you know, the taxes and insurance separate
 4   from the principal and interest due.
 5                   MS. HARRIOTT:  Okay, and I haven't seen her
 6   amended proof of claim.  I think she just filed one --
 7                   MS. GONZALEZ:  And there is ---
 8                   MS. HARRIOTT:  --  another one.
 9                   MS. GONZALEZ:  I'm sorry, I didn't mean to
10   interrupt.
11                   There is a lot of miscellaneous items that I
12   can't even tell what they are.
13                   THE COURT:  Okay.  I'm sure that's easy to
14   work out, okay?
15                   MS. HARRIOTT:  Okay.
16                   THE COURT:  Because whether I get reversed
17   or not, there is going to have to be a fixed number,
18   right?
19                   MS. HARRIOTT:  Okay.
20                   THE COURT:  Okay.  So get the information,
21   and maybe you two can sit down and chat and figure out
22   what it is --
23                   MS. HARRIOTT:  Okay.
24                   THE COURT:  -- okay?
25                   MS. GONZALEZ:  Thank you, your Honor.
```

Page 34

1               THE COURT:  All right.  Thank you.

2               MS. GONZALEZ:  So I'll do an order

3   continuing this to next month?

4               THE COURT:  Fine.

5               MS. GONZALEZ:  Thank you.

6               MS. NEIDICH:  Thank you, your Honor.

7

8

9

10

11               (Thereupon, the hearing was concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 35

1

2

3                                    CERTIFICATION

4

5    STATE OF FLORIDA        :

6    COUNTY OF MIAMI-DADE   :

7

8                    I, Cheryl L. Jenkins, RPR, RMR, Shorthand

9    Reporter and Notary Public in and for the State of Florida

10   at Large, do hereby certify that the foregoing proceedings

11   were transcribed by me from a digital recording held on

12   the date and from the place as stated in the caption

13   hereto on Page 1 to the best of my ability.

14                    WITNESS my hand this 4th day of June, 2018.

15

16

17        _____

18             CHERYL L. JENKINS, RPR, RMR

19             Court Reporter and Notary Public
             in and for the State of Florida at Large
20                   Commission #GG 138863
                     December 27, 2021

21

22

23

24

25