## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 18-22204-WILLIAMS

REVERSE MORTGAGE SOLUTIONS, INC.,

        Appellant,

vs.

ALEIDA C. NUNEZ,

        Appellee.

_____/

### ORDER

Appellant appeals the Bankruptcy Court's decision holding that Appellee/Debtor ("Debtor") is a "borrower" under a reverse mortgage issued by Appellant ("RMS"). Debtor filed a Chapter 13 plan proposing to cure the default under the reverse mortgage by paying off the unpaid taxes and insurance. RMS objected to the plan, arguing that Debtor was not a "borrower" under the reverse mortgage and therefore Debtor could only cure the default and prevent foreclosure by paying off the entire debt secured by the mortgage. The Bankruptcy Court overruled RMS's objection to plan confirmation and denied RMS's motion for reconsideration. RMS appeals these orders. For the reasons below, the Court reverses and remands to the Bankruptcy Court for further proceedings in accordance with this order.

## I.   BACKGROUND[1]

This appeal involves a dispute over the interpretation of terms in a reverse mortgage. Multiple documents were executed as part of the transaction. Debtor's mother executed all of the documents, while Debtor only executed one – the home equity conversion mortgage.  Debtor's mother died prior to Debtor's Chapter 13 filing.  RMS contends that the mother's death constituted a breach as defined under the terms of the reverse mortgage and related documents which entitles RMS to declare the debt due and foreclose on the reverse mortgage.  Despite RMS's contention, Debtor proposed a Chapter 13 plan that treated Debtor as a "borrower" under the reverse mortgage who could remain in possession of the property for life without paying the underlying loan in full.  RMS objected to the Chapter 13 plan, but the Bankruptcy Judge—relying in part on two cases which were undermined by new case law issued after the initial ruling— overruled the objection by holding that Debtor was a "borrower" under the terms of the reverse mortgage.  RMS now appeals.

### A.    The Reverse Mortgage Transaction

#### 1.    The Note and Loan Agreement

On June 24, 2008, Debtor's mother, Olga Nunez, executed a Home Equity Conversion Note ("Note") and Home Equity Conversion Loan Agreement ("Loan Agreement") in favor of World Financial Corp.  Under the Note and Loan Agreement, Olga Nunez received a loan in the maximum principal amount of $531,000, secured by a

---

[1]Debtor states in her response brief that she is not "dissatisfied" with RMS's statement of the case.  As a result, Debtor did not set out her own statement of the case.

reverse mortgage on real property located at 99440 Southwest 155th Avenue, Miami, Florida 33196 (the "Property").  The Debtor did not sign the Note or the Loan Agreement.

The Note defined the word "Borrower" as "each person signing at the end of this Note."  Olga Nunez is the only person who signed the Note.  The Note states that it is "secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called 'Security Instrument.'" Olga Nunez, as "Borrower" under the Note, has "no personal liability for payment of the debt."  The lender may only "enforce the debt through the sale of the Property covered by the Security Instrument."  Any principal and interest advanced under the Note is due on February 7, 2070, but the lender "may require immediate payment in full of all outstanding principal and accrued interest if . . . Borrower dies and the Property is not the principal residence of at least one surviving Borrower."

### 2. *The Security Instrument*

On the same day that Olga Nunez executed the Note and Loan Agreement, she also executed the Adjustable Rate Home Equity Conversion Mortgage (the "Security Instrument").  The Security Instrument recognizes the existence of the Loan Agreement and Note and the duty to repay amounts advanced as "evidenced by Borrower's Note." The Security Instrument secures "the repayment of the debt evidenced by the Note . . . up to a maximum principal amount of Five Hundred and Thirty-One Thousand and 00/100 Dollars ($531,000.00)" as well as other amounts due under the Security Instrument and "the performance of Borrower's covenants and agreements under [the] Security Instrument and the Note."

The Debtor is identified by name in two parts of the Security Instrument. First, the Debtor is identified as a mortgagor of her remainder interest in the property subject to the Security Instrument, while her mother Olga Nunez is identified as mortgagor of a life estate in the property: "The mortgagor is Olga Nunez a/k/a Olga E Nunez, a single woman, as to Life Estate interest and Aleida C Nunez, a single woman, as to the remainder, whose address is 9940 Southwest 155th Avenue, Miami, FL 33196 ("Borrower")."

Second, the Debtor's name is on the signature page of the Security Instrument, which reads as follows:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses: _____ Thais Aragon

_____ Mike Fernandez

Signature:

X _____ OLGA NUNEZ _____

_____ _____

_____ ALEIDA C NUNEZ, AS REMAINDERMAN _____

On June 24, 2008, the same day that Olga Nunez signed the Note and Loan Agreement, Debtor and her mother executed a quit claim deed. The quit claim deed transferred Debtor's joint tenancy interest in the Property, granting Olga Nunez a life estate, with Debtor retaining a remainder interest.

4

The Security Instrument has similar language to the Note about default and acceleration. In particular, paragraph 9 of the Security Instrument provides that "Lender may require immediate payment in full of all sums secured by this Security Instrument if: [a] Borrower dies and the Property is not the principal residence of at least one surviving Borrower . . . ."

### 3.    *Other Loan Documents*

In addition to the documents discussed above, Olga Nunez executed many other documents to obtain the reverse mortgage loan.  All of these documents identified Olga Nunez as the "Borrower."  None of these documents were executed by Debtor.  These documents include:

   • Residential Loan Application for Reverse Mortgages, which lists Olga Nunez under the section for "Borrower's Name."  Debtor did not sign the Loan Application, even though there was a space for a "Co-Borrower's Signature."

   • HUD/VA Addendum to Uniform Residential Loan Application, which identifies Olga Nunez as the "Borrower" for at least two signatures certifying consent to verify social security number and other certifications necessary for loan origination.

   • A Borrower's Certificate confirming, among other things, that Olga Nunez, as "Borrower," will not have outstanding certain other unpaid obligations in connection with the mortgage transaction.

   • Settlement Statement for the reverse mortgage closing identifying Olga Nunez as the "Borrower."  Debtor did not sign the Settlement Statement, even though it included a signature line for a second "Borrower."

   • Addendum to HUD-1 Settlement Statement for "CERTIFICATION OF BORROWER" signed by Olga Nunez.

   • Reverse Mortgage Analyst packet, which identified Olga Nunez as the "Borrower" for purposes of Home Equity Conversion Mortgage Insurance.  The Debtor did not sign any pages of the Reverse Mortgage Analyst packet.

• Home Equity Conversion Mortgage Federal Loan Closing Truth-In-Lending Disclosure Statement, which identified Olga Nunez as "Borrower" in the signature block.

• Certificate of HECM Counseling, which Olga Nunez signed recognizing that "Borrowers are those parties who have signed the Note and Mortgage or Deed of Trust."

### 4.    *Default and State Court Foreclosure Action*

On September 5, 2015, RMS filed a verified complaint to foreclose the Security Instrument against the Property based on Olga Nunez's failure to pay taxes and maintain insurance, as required by the Security Instrument and related loan documents.  Eleven months later, on July 23, 2016, Olga Nunez died.  RMS then amended its state court foreclosure action to include her death as an additional basis of default under the Note and Security Instrument. Before the state court action concluded, Debtor filed bankruptcy.

### B.    Debtor's Bankruptcy Filing

On August 30, 3017, two years after the foreclosure action was filed against Olga Nunez and a year after her death, Debtor filed a voluntary petition under Chapter 13 of Title 11 of the United States Code.  As a result, the state court foreclosure action was automatically stayed.  In November 2017, RMS filed a proof of claim in Debtor's Chapter 13 proceeding, which it amended on January 3, 2018.  The amended proof of claim asserts a total secured claim due and owing under the Note and Security Instrument in the amount of $390,671.74.

### C.    Debtor's Bankruptcy Plan

Debtor filed a proposed Chapter 13 plan on the date she filed her petition.  The plan proposed that Debtor would cure the arrears for payment of insurance and taxes on

6

the Note and Security Instrument while Debtor retained possession of the Property.  The plan made no allowance for paying the Note in full.  On October 16, 2017, RMS filed a preliminary objection to Debtor's plan.  The objection argued that Debtor's mother, Olga Nunez, was the only Borrower on the Note. Because Olga Nunez had died, the Note had fully matured, and thus became due and payable upon her death, which occurred before the Debtor's bankruptcy filing.  Accordingly, RMS argued that Debtor could only modify RMS's rights under § 1322(c)(2) of the Bankruptcy Code by agreeing to pay all amounts due under the Note through the bankruptcy plan.

On October 27, 2017, Debtor amended her Chapter 13 plan, still proposing to retain the Property securing the Note without paying RMS in full.  Debtor also filed a response and amended response to RMS's plan objection.  Debtor argued that the Security Instrument defined her as a "Borrower" and therefore RMS could not accelerate or foreclose while she is living.  Debtor primarily relied on two decisions from Florida's Third District Court of Appeals to support her position – *Smith v. Reverse Mortgage Solutions, Inc.*, 200 So. 3d 221 (Fla. 3d DCA 2016) and *Edwards v. Reverse Mortgage Solutions, Inc.*, 187 So. 3d 895 (Fla. 3d DCA 2016).

On January 29, 2018, RMS filed another Memorandum of Law to support its objection to Debtor's plan. RMS argued that, construing the Security Instrument and related documents together under Florida law, Debtor is not a "Borrower" under the Security Instrument and thus could not remain in possession of the Property without paying the Note in full.

### D.     The Bankruptcy Court Overrules RMS's Plan Objections

The Bankruptcy Court held a hearing on RMS's objections to Debtor's amended plan on March 6, 2018.  At the hearing, the Bankruptcy Court announced it was overruling RMS's plan objection because "the unambiguous mortgage . . . defines borrower as both the actual borrower and her daughter, the debtor."

On March 28, 2018, the Bankruptcy Court entered its memorandum opinion and order overruling RMS's plan objection (the "Memorandum Opinion").   The Bankruptcy Court held that "the Debtor, Aleida C. Nunez . . . was the 'Borrower' under the [Security Instrument] encumbering the Debtor's home  .  .  .  even though the Debtor was not the Borrower under the loan secured by the [Security Instrument], [and] the Debtor may [therefore] cure the [Security Instrument] defaults in her Chapter 13 Plan."  To reach this conclusion, the Bankruptcy Court held: (1) it was not "necessary or appropriate to look at the other Loan Documents to determine what 'Borrower' means in the [Security Instrument]" because the Security Instrument is "unambiguous" and (2) it was bound by the holdings in *Smith v. Reverse Mortgage Solutions, Inc.*, 200 So. 3d 221 (Fla. 3d DCA 2016) and *Edwards v. Reverse Mortgage Solutions, Inc.*, 187 So. 3d 895 (Fla. 3d DCA 2016).  The Bankruptcy Court also cited the federal regulations in effect when the reverse mortgage was executed as well as  HUD Mortgage Letter 1997-15.

### E.     The Motion for Reconsideration

RMS filed a motion for reconsideration, and the Bankruptcy Court held a hearing on the motion.  At the hearing, the Bankruptcy Court receded from the *Smith* and *Edwards* cases, based on the Third District Court of Appeals' recent holding in *Onewest Bank, FSB*

8

v. *Palmero*, 2018 WL 1832326 (Fla. 3d DCA 2018).  Nonetheless, the Bankruptcy Court held that it was inappropriate to look beyond the four corners of the Security Instrument because the term "Borrower" was not ambiguous. At the hearing, the Bankruptcy Judge also expressed concern that if the term "Borrower" did not include Debtor, then the Security Instrument "may" be invalid.  The Bankruptcy Court subsequently entered its order denying the motion for reconsideration.  This appeal followed.

## II.    STANDARD OF REVIEW

A bankruptcy court's conclusions of law are reviewed *de novo*.  *In re Coady*, 588 F.3d 1312, 1315 (11th Cir. 2009).  Because contract interpretation is a question of law, a bankruptcy court's interpretation of a contract is reviewed *de novo*.  *See Avenue CLO Fund Ltd. v. Bank of America, NA*, 709 F.3d 1072, 1077 (11th Cir. 2013).

## III.    DISCUSSION

On appeal, RMS argues that the Bankruptcy Court erred in holding that the Debtor was a "Borrower" entitled to maintain possession of the mortgaged Property after her mother's death without paying off the Note because: (1) all of the mortgage transaction documents must be construed together; (2) when there is an inconsistency between the Note and the Security Instrument, the language of the Note prevails; (3) properly construing the term "Borrower" as excluding the Debtor does not render the Security Instrument invalid;[2] (4) the Code of Federal Regulation and HUD Mortgage Letter do not

---

[2]This issue was not raised by the parties in the Bankruptcy Court.  At the hearing on the motion for reconsideration, the Bankruptcy Judge noted that if Debtor were not a "Borrower" under the Security Instrument, it might be invalid because the remainderman—Debtor—would not be bound to any of the Security Instrument's obligations.  A review of the record indicates that neither party raised issues regarding

control the terms of the Security Instrument; and (5) *Johnson v. Home State Bank*, 501

U.S. 78 (1991), does not support the Bankruptcy Court's ruling.[3]

### A.   All of the Transaction Documents Must Be Construed Together

In holding that Debtor was a "Borrower" under the Security Instrument, the

Bankruptcy Court concluded that the Security Instrument was unambiguous and,

therefore, it was not necessary or appropriate to consider the other loan documents in

construing the terms of the Security Instrument.  RMS maintains that this is error and in

contravention of clear Florida law which provides:

> Where other instruments are executed contemporaneously with a mortgage
> and are part of the same transaction, *the mortgage may be modified by
> these other instruments*. All the documents should be read together to
> determine and give effect to the intention of the parties. *Boyette v. Carden*,
> 347 So.2d 759 (Fla. 1st DCA 1977). The primary rule of construction of a
> mortgage is to ascertain the intention of the parties. This can be
> accomplished not only from the face of the instrument but also from the
> situation of the parties and the nature and object of the transaction.
> *Huntington Nat'l Bk. v. Merrill Lynch Credit Corp.*, 779 So.2d 396 (Fla. 2d
> DCA 2000); *Boyette*.

---

the validity of the Security Instrument or whether Debtor was bound by its terms.  Further,
a review of the Bankruptcy Judge's order and the transcript of the hearing on the motion
for reconsideration indicate that this was not a basis for the Bankruptcy Judge's ruling; it
merely "reinforced" the conclusion.  Consequently, the Court finds it is not appropriate to
address this issue now because the record is not fully developed and the Bankruptcy
Judge may need to hold an evidentiary hearing on this issue at a future date.

[3]This case is factually and legally inapplicable.  It does not involve a contract interpretation
issue.  Instead, *Johnson* stands for the proposition that "a debtor may treat a mortgage
encumbering property of the debtor in a Chapter 13 plan even if the debtor has no *in
personam* liability."  (DE 59 at 7).  Neither party disputes this proposition. But *whether*
Debtor can treat the mortgage in her Chapter 13 plan—everyone agrees she can—has
no bearing on *how* the mortgage is to be treated.  Debtor argues that she could maintain
possession of the property by curing the default relating to taxes and insurance, while
RMS asserts that Debtor may only keep the property if she pays the Note in full during
the course of her Chapter 13 plan.  Because *Johnson* is irrelevant to this issue, the Court
will not address the case further.

*Sardon Foundation v. New Horizons Service Dogs, Inc.*, 852 So. 2d 416, 420 (Fla. 5th DCA 2003) (emphasis added). *See also Graham v. Fitts*, 43 So. 512, 513-14 (Fla. 1907) (when a "note and mortgage were executed at the same time in one transaction relating to the same subject, and the mortgage refers to the note[,] they should be considered together in determining their meaning and effect"); *MV Insurance Consultants, LLC v. NAFH Nat'l Bank*, 87 So.3d 96, 99 (Fla. 3d DCA 2012).  Generally, this doctrine of mutual construction applies "where the note and mortgage are inconsistent." *Boyette v. Carden*, 347 So. 2d 759, 761 (Fla. 1st DCA 1977).

Debtor argues that Florida courts prohibit the consideration of other evidence in interpreting the mortgage because the mortgage is not ambiguous.  But the cases Debtor relies on are distinguishable.  While the court in *Sims v. New Falls Corp.*, 37 So. 3d 358, 361 (Fla. 3d DCA 2010) discusses its holding in broad language that appears on point, the facts of the case show it is not persuasive here.  In *Sims*, the note holder, in an action brought only on the note, sought to rely on a choice of law provision in the mortgage that explicitly stated that the provision was applicable to the mortgage.  *Id.*  Thus, the court held that the choice of law provision in the mortgage could not be imported into the note to vary the unambiguous terms of the note.  *Id.*  Here, on the other hand, the definitions of "Borrower" set out in the various documents are not explicitly limited in their applicability like the choice of law provision in *Sims*.  Most of the other cases cited by Debtor do not involve multiple documents executed as part of the same transaction, as here, and none refute that Florida follows the doctrine of mutual construction.

In its written opinion, the Bankruptcy Court stated that it was bound by the holdings in two Florida District Court of Appeal cases – *Smith v. Reverse Mortgage Solutions, Inc.*, 200 So. 3d 221 (Fla. 3d DCA 2016) and *Edwards v. Reverse Mortgage Solutions, Inc.*, 187 So. 3d 895 (Fla. 3d DCA 2016). However, at the hearing on the motion for reconsideration, the Bankruptcy Court receded from this reliance given the issuance of *Onewest Bank, FSB v. Palmero*, 2018 WL 1832326 (Fla. 3d DCA 2018).[4] Unlike the decisions in *Smith* and *Edwards*, where the court had only the mortgages and notes before it, the *Palmero* court had before it multiple documents relating to the transaction – the mortgage, the note, the loan application, the loan agreement, and the non-borrower spouse ownership interest certification. In *Palmero*, one spouse signed all of the documents as the "borrower" while the other spouse signed only the mortgage as a "borrower" and signed the non-borrower spouse ownership interest certification as the "non-borrower spouse." *Id.* at *1. On the mortgage, the "borrower" was defined as "Roberto Palmero, a married man reserving a life estate unto himself with the ramainderman [sic] to Luisa Palmero, his wife, Idania Palmero, a single woman and Rene Palmero, a single man." *Id.* At the end of the mortgage, Mrs. Palmero signed under the statement: "BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it." *Id.* First, the *Palmero* court noted that, under Florida law, it was required to read all the documents together in determining whether the spouse was a "borrower" under the

---

[4]This case has not yet been released for publication by the issuing court. At last review, there was a pending motion for rehearing.

mortgage. *Id.* at \*4. Then, reading all the documents together, the court found that Mrs. Palmero was not a borrower under the mortgage. *Id.*

As in *Palmero*, the record here includes numerous documents that were all part of the reverse mortgage transaction entered into by Debtor's mother. Thus, as *Palmero* and the other cases cited above indicate, Florida law dictates that all of these related documents must be read together. Accordingly, the Court must consider all the loan transaction documents together.

### B. The Language of the Note Controls Over the Language of the Security Instrument

RMS argues that, if the Note and Security Instrument are inconsistent, under Florida law, the terms of the Note must prevail. Debtor has not responded to this argument. RMS maintains that the rule in Florida is "if there is a conflict between the terms of a note and mortgage, the note should prevail. . . . Effect should be given to both however, where there is no actual or necessary conflict." *Hotel Management Co. v. Krickl*, 158 So. 118, 119 (1934) (citation omitted); *see also Cleveland v. Crown Financial, LLC*, 183 So. 3d 1206, 1210 (Fla. 1st DCA 2016). Consequently, RMS contends that Debtor, who is only defined as a "Borrower" in the Security Instrument, is not a "Borrower" given the language in the Note and Loan Agreement.

Here, Debtor's interpretation puts the Note and Security interest in direct conflict. There is no way to reconcile the Note and the Security Instrument if Debtor is a "Borrower" under the terms of the Security Instrument but not one under the terms of the Note. The Note specifically acknowledges the Security Instrument. Under the Note, if a "Borrower" dies and the property is not the principal residence of at least one surviving "Borrower,"

the lender may require immediate payment in full of the outstanding principal and accrued interest and may enforce these rights against the Property.  Olga Nunez is the only "Borrower" under the Note.  Consequently, under the terms of the Note, the lender may demand immediate payment of the outstanding principal and interest upon Olga Nunez's death and if not paid may foreclose on the Property.  But under the Bankruptcy Court's interpretation of the Security Instrument, if Olga Nunez dies, the lender may not enforce these foreclosure rights upon Olga Nunez's death but must wait until Debtor also dies or moves out of the Property.  Thus, if the Security Instrument is interpreted out of context with the larger transaction, as the Bankruptcy Court did, the Security Instrument would nullify terms of the Note.  Under these circumstances, Florida law dictates that the terms of the Note should prevail.  Thus, Debtor is not a "Borrower."

This conclusion is further supported by the authority discussed above – that all of the transaction documents must be considered together.  Considering all the documents together - the Note, the Loan Agreement, the Security Instrument, the  Residential Loan Application for Reverse Mortgages, the HUD/VA Addendum to Uniform Residential Loan Application, a Borrower's Certificate, Settlement Statement for the reverse mortgage, Addendum to HUD-1 Settlement Statement, Reverse Mortgage Analyst packet, Home Equity Conversion Mortgage Federal Loan Closing Truth-In-Lending Disclosure Statement, and Certificate of HECM Counseling[5] – Debtor is not a "Borrower."  None of

---

[5]All of these documents except the Home Equity Conversion Mortgage Federal Loan Closing Truth-In-Lending Disclosure Statement, and Certificate of HECM Counseling were executed on the same day, June 24, 2008, and were executed as part of the same transaction.

these documents identify Debtor as a "Borrower," except the Security Instrument, which makes clear that the reason Debtor signed the Security Instrument was because of her status as remainderman.    Both times Debtor is directly identified in the Security Instrument her status as remainderman is explicitly set out.   The other documents make clear that Debtor had no rights under the Note or Loan Agreement and that the Lender did not consider Debtor to be the Borrower.   While the language used in the Security Instrument may have been inartfully drafted, it does not change Debtor's status when all of the transaction documents are considered together.   Accordingly, Debtor was not a "Borrower" under the Security Interest.

### D.   The Code of Federal Regulations and HUD Mortgage Letter Do Not Control the Terms of the Security Instrument

Although not the basis for the Bankruptcy Court's decision, Debtor also relies on the federal regulations governing reverse mortgages and HUD Mortgage Letter 1997-15. However, these regulations dictate the terms a reverse mortgage loan must have for it to be insurable by HUD under the FHA Home Equity Conversion Mortgage Program.   *See* 12 U.S.C. § 1715z-20(j).   Whether the reverse mortgage loan between Olga Nunez and her lender meets those requirements is a different issue than the issue before this Court. A failure to meet those requirements effects the loan's insurability under the insurance program; it does not effect the agreements executed by the parties to the loan.   *See Estate of Jones v. Live Well Financial, Inc.*, 2017 WL 41766661 (N.D. Ga. 2017) (and cases cited) (the statute and associated regulations do not govern the rights of the parties to a valid mortgage contract; they only regulate HUD's administration of the insurance program).   Similarly, the HUD Mortgage Letter does not apply because it addresses

15

issues related to the insurance program.  The Court therefore finds that the federal regulations and the HUD Mortgage Letter are not applicable and should not control interpretation of the loan documents here.[6]

## IV.    CONCLUSION

All of the reverse mortgage transaction documents should have been considered together when interpreting the term "Borrower" under the Security Instrument.  When the Security Instrument is interpreted in the context of the larger transaction, Debtor does not constitute a "Borrower" under the Security Instrument.  Accordingly, this matter is **REVERSED and REMANDED** for further proceedings in accordance with this order.

**DONE AND ORDERED** in chambers in Miami, Florida, this 20ᵗʰ day of March, 2019.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[6]Even if the Court considered the applicable federal regulations, the regulations in effect at the time defined the term "mortgage" as including "the credit instrument, or note, secured by the lien, and the loan agreement between the mortgagor, the mortgagee and the Secretary."  24 C.F.R. 206.3(3) (2008).  Thus, the Court would be required to look to all of the loan documents to determine who was the "Borrower."